and I will now call the next case. Ansel Johnson v. Sam Culpepper and we have Mark Gritzmacher for the appellant. Mr. Gritzmacher, you're on mute. Good morning, Your Honor. Am I here? You may proceed, yes. Thank you. Good morning, and may it please the Court. My name is Mark Gritzmacher, and I represent the appellant Ansel Johnson. After nearly six years diligently contesting the legality of his incarceration through the Florida court system, often pro se from prison, the Florida District Court of Appeal finally recognized that the basis underlying Mr. Johnson's sentence was error. In so doing, the Florida District Court of Appeal explicitly directed that a resentencing hearing was to take place so that Mr. Johnson could determine the true nature of his sentence and specifically so that the state could determine whether there was any other basis for his habitual felony offender status. That sentencing hearing never occurred. This appeal asks whether it was error for the district court to dismiss, with prejudice and without leave to amend, Mr. Johnson's civil rights claims flowing from that illegal incarceration on the district court's presumption that it was obvious when Mr. Johnson was released from prison that he wouldn't be resentenced, that he didn't plead otherwise, and therefore that his claims started to accrue at the moment he was released from prison. The answer to that question is yes. The district court's presumptions were error, and so were the legal conclusions that flowed from it. I think, I'm sorry to interrupt you, but you've got a lot of interesting arguments. I think that it's, for my part, speaking only for myself, I disagree with the district court's conclusion that it was obvious that he would be resentenced. But so let's say that we disagree with that under Wallace and Heck. Yes, Judge Grant, I'd be happy to. So I think there are then two bases for establishing the timeliness of his claims that are set out in his complaint. I think first, as an initial matter, under this court's discovery rule applicable to 1983 claims, it was not reasonably apparent to Mr. Johnson that there were facts supporting a complete and I think that's the case for several reasons. First and foremost, he has a decision from the Florida District Court of Appeal explicitly stating he's going to be resentenced, he's going to attend a resentencing hearing. Now that's a entitlement under Florida law that he is entitled to attend the resentencing hearing. Second, that never occurred, and in fact, Mr. Johnson pleads, he was simply released in the middle of the night without any understanding of whether or not he was going to attend the resentencing hearing. In fact, he pleads to this day that he was never resentenced. And then I would say third, there are also facts and allegations about the fact that, or excuse me, I should be careful and say, we know from the record that he was represented by counsel. And I think there's an additional component here that if he was never informed, it would be reasonable for a plaintiff under his circumstances not to know at the exact moment he's released from prison in the middle of the night, as he alleges, that he has an injury, there's no other basis for his incarceration. And so the clock starts running on his constitutional claims at that moment. But didn't he, didn't he, I mean, he had been asserting that he had been wrongfully imprisoned for a long time. Didn't he know at the time of his release that he had been wrongfully imprisoned for at least 10 months and 11 days? So even though he knew in some sense, and he had been fervently advocating that he'd been wrongfully imprisoned for a long time, I think there are a couple important legal principles at play here. One is Hex v. Humphrey and the fact that his constitutional claims actually go to the validity of his incarceration. And so I think there's, and in fact, Mr. Johnson filed a habeas petition after the decision came down. And I think there's a relationship here between he wasn't even allowed to file his constitutional claims until at least when his previous sentence had been terminated since it had been formally vacated. I don't think that that was evident when he was released. I think it's actually, it's not uncommon for a defendant not to be imprisoned while still awaiting sort of the finality of sentencing or his conviction. So I think speaking specifically to the running of the clock, no, I think there is a, there is leeway here between when he's released and when eventually, you know, maybe it's more reasonable to conclude I'm not going to be resentenced and there's no basis for my continued incarceration. What about the fact that he had been represented by the Office of the Public Defender? And I know that the office had moved to withdraw, but the court never took action on that. Surely, you know, he could have the public defender's office to find out the status of any resentencing. So I think Judge Branch, you know, consistent with Leal and other cases like this, I think we just don't have a fully developed factual record on this relationship with counsel at the time. I think it's clear from his allegations and the complaint that he alleges he's never been resentenced. So I think he was never informed. He was never, I think it's a fair reading of the complaint that he was never informed of the fact that his hearing had been waived. And so I think the relationship between him and his counsel candidly isn't fully developed in his allegations. But I think what is clear is that he was not informed that it was reasonable for him given whatever, putting aside whatever acrimony or whatever relationship between him and his counsel was at the time. You know, the fact that he wasn't informed only supports the reasonableness of his confusion surrounding the finality of the District Court of Appeals judgment. And if I may, I think that, you know, there are two bases under the law for establishing the timeliness of his claims here. So I think we've been talking some about accrual, but I think even if the court decides that accrual occurred after the court's Florida District Court of Appeals decision or after he was released from prison, you know, I think this falls right in heart of the line of cases talking about a petitioner being misled. And I think, you know, this goes exactly to your question, Judge Branch, is I think when both when you have a decision instructing one thing, you know, the precedent's clear that it's not unreasonable for a petitioner to believe that the decision, the instructions of the decision will be carried out. And I think you compare that here with the fact that he was represented by counsel and the record is not fully developed on the relationship of what happened between him and his counsel, but it actually only underscores the reasonableness of this confusion and having a direction from the Florida District Court of Appeal and then having a sentencing supposedly waived without his notice. When do you contend the statute of limitations started to run? So, Judge Schofield, I would say that the court doesn't need to have a precise date. I do think it was at least three months after he was released from prison, which would make his claims timely. And I think, you know, the court has said in the context of the 90 Schofield decision, for example, tolling means just what it says. The clock has stopped while tolling is in effect. So I think if tolling occurs or if the reasonableness of, you know, facts he's aware of make it reasonable that he knows he has a complete and present injury. You say sometimes after three months, is that it? Yes, sir. I think that's all that's required. Well, what happened to start it sometime after three months? It's a fair question, Judge Schofield. And I would say that, you know, at some point when he wasn't resentenced and when he wasn't when when he wasn't contacted by counsel, I think, Mr. Johnson, it's clear he filed these complaints. I think at some point it would have become reasonable for him to understand that he, you know, he wasn't going to be resentenced. And in fact, there's no basis for his continued incarceration. And, you know, I think in 90 Schofield, actually, there was a decision from the Supreme Court of Georgia. It wasn't passed down to the petitioner with respect to his federal habeas petition. And the court there says that even after a year, he started to kind of realize something was amiss, and he contacted the court. And he realized that even though the court said it would notify him, he was never notified of the decision. And the court here said that that was fair, that was reasonable. So here, I don't even think you need a year, but I think there were at least a matter of months where, you know, it would have been fair for someone in in Mr. Johnson's shoes, not to have known. And then at some point, you know, maybe it's more of a, the facts are there, and it's reasonable then to at least, you know, call and figure out whether or not he would ever be resentenced. Go ahead, Judge Grant. How would his claim have looked different after resentencing than it would have looked the day after he was released? So if I understand your question correctly, you know, I think he's claimed from a tolling perspective or from a... From a substantive merits perspective. What is different about his claim after resentencing than before resentencing? But after release? You know, Mr. Johnson, I think kind of includes within his due process violations, the fact that his claim, not only was his sentence void, but there was actually no resolution of the sentence. And so I think there is an extent to which his due process violations, at least as he's pleaded, you know, it's reasonable to read that he is including the fact that he never was entitled to resensing hearing. He's just left in limbo. But I don't think that's... But I think the heart of his claim certainly is the fact that he was unlawfully incarcerated for what could have been over, you know, over three and a half, four years, because his minimum guidelines we know were only about 16 months. So if that doesn't answer your question, I'm happy to elaborate. So I think in either case, the day after he was released, he could have raised a claim for his wrongful detention, right? And after he was resentenced, he could have raised a claim for his wrongful detention, perhaps for a longer period of time. Is the idea that the court would have nunk per tunk somehow potentially cut his sentence lower than five years even? So I think that's right. But I would also just say, I think it's our position that it's not so clear whether he has a complete claim at the moment of his release, simply because cases like Heck and, you know, and the precedent falling at Wallace v. Cato in these cases are pretty clear that you have to be careful about bringing a 1983 claim until, you know, it's until it's invalidated, until your sentence is invalidated. And you've sort of proven that the sentencing or the conviction that your 1983 allegations are going toward has been invalidated by the courts. So I think part of it is just a finality concern here of when he's released in the middle of the night, as he claims, it's not entirely clear that his previous sentence has been invalidated. In fact, the District Court of Appeals explicitly says that the lower court was wrong to deny his illegal sentence motion. But I think the Court of Appeal could have at that moment, it had the authority to, you know, just say, release him immediately. His sentence is void, and he should have only been sentenced to the lower end of the guidelines. He had guidelines in place, and Florida law actually gives the Florida Court of Appeals authority to do something like a non-proton from the Court of Appeals. I think here it was explicitly no, he needs to go back and have a re-sentencing. We're not exactly sure of the contours of his sentence. And I think that wasn't finalized when he was released in the middle of the night, according to Heck. So he would contend that he, at the time of his release, was not aware that his sentence had been invalidated. And so therefore, he needed to wait for re-sentencing to determine whether the government, if the government say had another predicate, so they could have re-sentenced him to 10 years, then at that point, he doesn't have a claim for wrongful imprisonment. But if the court had said in a hearing with him present, correct, you were wrongfully imprisoned, you should have only been prisoned for a maximum of five years, then he does. Yeah, excuse me, I didn't mean to interrupt. But I think at that point, yes, his claims would start to run, at least. And Mr. Johnson, I don't think was thinking in terms of Wallace v. Cato when he was released in the middle of the night. And so I do think, I want to be sensitive to the fact that he firmly believed that he had a claim as he was litigating from prison for five years, five and a half years, waiting for a decision affirming the fact that he was illegally incarcerated. I think from a matter of accrual, and I just want to make that distinction to not speak for Mr. Johnson, but as a matter of accrual, though, I think you're exactly right. I think that when he was released in the middle of the night, you know, in fact, to this day, he says, my sentence is void. I know it's wrong, but I don't know what my sentence is. And so I think there is an issue of finality for purposes of Wallace v. Cato and Hector Humphrey and when the accrual clock would start. But at the same time, I think he firmly believed that the decision was error, or his sentencing was error and unlawful, and that his constitutional claims flow from that. Counsel, one quick question. You are claiming part of equitable tolling that he filed in the fact that that was dismissed for failure to prosecute. So, Judge Branch, I think that's a great point. And if you may, I might run a little bit over time to answer your question. Please do. You know, I actually think that's another error of the district court. The district court sort of, again, said it was obvious it's the wrong venue. It was dismissed. He didn't even raise this as explicitly raised this. All three of those things are wrong. So, in fact, he had filed his complaint. He was granted informa pauperis status. And then I think that the case was reassigned to a different judge and just sat there on the docket. It wasn't dismissed for failure to prosecute until after the district court's ruling below here. So, in actuality, he did have a pending case, which the district court recognized came from the exact same set of facts and legal claims. And I would also just contend that he explicitly made this point in his objections to the R&R and in his original complaint that he had a pending case that was related in the injection of the R&R. He mentioned it, I think, four times, trying to argue that he's been trying. He's already filed these claims. They're related. And I think the district court just it was a very uncharitable reading of the complaint and, frankly, just diametrically opposed to this court's precedent of how we treat pro se plaintiffs. Thank you, counsel. Your time has expired. We have your case under submission.